UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

No. 10-cr-322 (JNE)

v.

ORDER

Marlon Terrell Collins,

        Defendant.

Defendant Marlon Terrell Collins pled guilty to conspiracy to distribute marijuana and cocaine and was sentenced, as a career offender, to 264 months imprisonment. That sentence was affirmed on appeal. *United States v. Collins*, 546 F. App'x 598 (8th Cir. 2013).

Collins subsequently filed a pro se motion to vacate or set aside his sentence under 28 U.S.C. § 2255, claiming that it had been imposed in violation of his rights under the Fifth, Sixth, and Eighth Amendments. In an order that issued on April 13, 2015, the Court dismissed Collins' Eighth Amendment claims as well as a portion of his Sixth Amendment claims relating to the representation he received in his direct appeal. That left for an evidentiary hearing Collins' claims, asserted under the headings of the Fifth and Sixth Amendments, that his guilty plea is invalid because it was induced by the Government's "fraud and misrepresentations" and by the ineffective assistance of his counsel in the district court.

The Court appointed counsel to represent Collins in these proceedings, and an evidentiary hearing was held on July 15, 2015. The Court heard testimony from Collins; from Craig Cascarano, the attorney who represented Collins in his district court proceedings; and from John Biederman, Calvin Meyer, and Sean Harris, three law enforcement officers who made efforts to work with Collins as a confidential informant before he was charged in this matter.

Based on all of the evidence received and the arguments that have been offered, the Court now makes the following findings of fact, conclusions of law, and order. *See* 28 U.S.C. § 2255(b) (specifying that it is the duty of the district court to "determine the issues and make findings of fact and conclusions of law with respect thereto"). For the reasons explained below, Collins' petition is denied.

## I.     Findings of fact.

In 1992, Collins was indicted in this District in case No. 3:92-cr-138 (RHK) on two charges: possessing with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii); and carrying a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Collins was represented in that case by Craig Cascarano, the same defense attorney who would later represent him in this matter. Collins pled guilty to both of the charges and was sentenced to 60 months imprisonment and four years of supervised release.

In 1998, while serving that term of supervised release, Collins was indicted in this District in case No. 98-cr-14 (1) (RHK) on three charges: conspiracy to distribute and to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1); and aiding and abetting the possession with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 2. Collins was again represented by Cascarano. Collins pled guilty to the third count, the first two were dismissed, and he was sentenced to 136 months imprisonment followed by five years of supervised release.

Collins was released from prison and began his term of supervision in 2007. Just as he had during his first term of supervised release, Collins resumed his involvement in the illicit drug

trade in the Twin Cities. Collins admitted to purchasing cocaine in quantities up to one kilogram from two Mexican men at an auto body shop in Saint Paul while on supervision. He also admitted to traveling to Arizona on several occasions during the summer of 2010 to obtain quantities of marijuana, totaling approximately 150-200 pounds, to sell in Minnesota. Collins was also suspected of having knowledge of – and perhaps of participating in – home invasions, bank robberies, and other violent crimes in the Twin Cities throughout this period.

This case was precipitated by a trip Collins made to acquire drugs from his Arizona source in early September of 2010. On September 2, Collins went to a FedEx location in Phoenix and sent a box containing approximately 1.5 kilograms of cocaine and 8 kilograms of marijuana to an address in the Twin Cities metro area. Collins' plan was to fly from Phoenix back to Minnesota, wait for the box to be delivered to that address, and then retrieve it from the doorstep, all without the addressee's knowledge.

That plan did not come to fruition. Law enforcement had surveilled Collins in Phoenix and had obtained a search warrant for the FedEx box. When Collins flew from Phoenix to Minneapolis-Saint Paul International Airport on September 3, Minneapolis police officer John Biederman – who was also an ATF task force officer – and a colleague were waiting for him in the terminal in plain clothes. Biederman, who focused on gang, gun, and drug offenses, was aware of Collins' extensive involvement in and knowledge of that type of crime in the Twin Cities, and he was interested in obtaining information from Collins for use in other investigations.

When Collins deplaned, Biederman initiated a discussion with him in a public area of the terminal. Collins admitted to Biederman that he had sent the box with cocaine and marijuana from Phoenix. At the end of the discussion, Collins, who had benefited in the past from

providing information to Minneapolis homicide detective Darcy Klung, offered his cooperation

to Biederman. Biederman told Collins that he was interested in information about violent

offenders, the two exchanged phone numbers, and Collins exited the airport.

Collins claimed that, during that discussion at the airport on September 3 and again at a

meeting that took place several days later, Biederman promised him that he would "make this go

away" – meaning that Collins would not face charges arising from the box of drugs he had sent

from Phoenix – in exchange for his cooperation. However, Biederman unequivocally denied

having made any such statement, and explained that he had in fact made clear to Collins from the

start that he would be charged over the incident. Collins' account of his interactions with

Biederman is not credible; Biederman's is. No benefits of any kind were ever promised to

Collins in exchange for his cooperation.

What was offered to Collins was the opportunity to work with federal agents as a

confidential informant before being charged and taken into custody. At the time, Collins was on

supervised release in case No. 98-cr-14 (1) (RHK). Law enforcement officials consulted with

the United States Attorney's Office about the information Collins was positioned to provide and

his willingness to cooperate. Thereafter, ATF Special Agent Calvin Meyer and an Assistant

United States Attorney approached the district court judge and probation officer overseeing

Collins' supervised release and proposed that Collins be allowed to act as an ATF informant for

a period of 90 days. They agreed.

A meeting was held soon afterward on October 1. Collins attended along with

Cascarano, whom he had retained in mid-September in the wake of the airport encounter with

Biederman. Also in attendance were the Assistant United States Attorney, Collins' probation

officer, Biederman, and Meyer. During the course of that meeting, the terms of the opportunity

being offered to Collins were explained to him. Among other points, Collins was told that he would have 90 days in which to remain out of custody for the purpose of cooperating with federal agents, after which he would be charged. Collins was also told that he was to be working with ATF Special Agent Meyer, that he was to follow Meyer's instructions, and that he was not to involve himself in any criminal activity except with the authorization and under the supervision of the ATF. Collins and Cascarano balked at the requirement that Collins work with Meyer, preferring instead that Collins channel his cooperation through the Minneapolis homicide detective Klung. However, after it was made clear that that was not a possibility, Collins agreed to the arrangement as offered. Collins also signed a "Confidential Informant Agreement" that outlined the expectations of the United States Probation and Pretrial Services Office for his work with the ATF in light of his ongoing supervision in case No. 98-cr-14 (1) (RHK).

Despite the deep knowledge Collins had of drug trafficking, violent crime, and gang activity in the Twin Cities, he did not prove to be forthcoming or helpful to federal law enforcement officials. On the rare occasions when Collins did divulge information, he provided leads only on what agents considered to be "low-hanging fruit" and at his own convenience. For example, in one instance on which Collins places much stock, he reported to Biederman that he had observed an individual at a party with a firearm bragging about having committed a robbery. That individual was arrested by Minneapolis police and later convicted in state court on robbery and firearm charges. On another occasion, Collins informed Meyer that he had been put in touch with an individual who was offering to sell a firearm illegally, but that he would have to act on the opportunity virtually immediately. Meyer was unable to do so, due to the need to vet the information and create an operational plan before proceeding.

These isolated and happenstance reports from Collins fell far short of what the federal agents who had arranged for him to remain out of custody reasonably expected of him. Collins has by his own admission been ensconced in the Twin Cities criminal underworld since childhood. He is an individual who is trusted by gang members, drug dealers, and violent offenders. Yet, from the time that he met with Biederman at the airport on September 3 forward, Collins provided no information that tangibly assisted any federal agent in opening or advancing any investigation, and he contributed nothing of value to any federal prosecution. He simply did not take advantage of the opportunity he had been given to assist federal authorities.

By November of 2010, Collins had been put in contact with DEA Special Agent Sean Harris. Collins told Harris about the two Mexican men who were selling drugs out of the auto body shop in Saint Paul. Collins admitted that he knew of that activity because he himself had purchased up to five kilograms of cocaine from them over the course of several months during his term of supervised release, but denied having made any such purchases since May of 2010. In following up, Harris learned that other federal agents were already conducting an active investigation of the location, and the information that Collins had provided was already well known to them. What's more, a confidential reliable informant working with those agents reported that he had observed Collins purchasing drugs from the two Mexican men at the auto body shop on several occasions since September.

Collins denied that he had done so, and claimed that whatever contact he had had with the men in recent months had been for the purpose of "grooming" them as potential targets for Harris. That, however, is not credible. As Harris and other federal officials concluded, Collins had in fact been involved in drug trafficking without the authorization or supervision of law enforcement during the period in which he was supposed to have been cooperating with federal

agents.  In short, as several witnesses put it at the evidentiary hearing, Collins was "playing both sides of the fence."  Even setting aside the fact that Collins had not actually been of any assistance to the agents who were attempting to work with him, this by itself was obviously a clear violation of the terms Collins had accepted on October 1.  The cooperation arrangement was therefore terminated, and Collins was arrested on November 17 to face charges related to the box filled with marijuana and cocaine that he had sent from Phoenix to Minnesota.

On that same date, Collins was charged in this District via Complaint with conspiracy to distribute marijuana and cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 846.  Collins was indicted on that same charge on December 7.  On December 14, the Assistant United States Attorney filed an information under 21 U.S.C. § 851, increasing the statutory sentencing range to 10 years to life imprisonment based on Collins' two prior federal felonies.

Collins well understood that he had compromised any defense he might have hoped to mount in the case by confessing to Biederman at the airport on September 3.  Therefore, in January of 2011, Cascarano communicated with the Assistant United States Attorney about a guilty plea.  The Assistant United States Attorney drafted and sent a written plea agreement to Cascarano.  That document did not reflect that Collins would likely be sentenced as a career offender by virtue of his two prior felony convictions, and so the predicted sentencing guidelines range was 84 to 105 months – much lower than it should have been.  The Assistant United States Attorney subsequently caught the error and alerted Cascarano to it.  Cascarano, however, mistakenly brought the original document containing the error to Collins and, during a meeting at the jail where he was being held, Collins signed it.

A hearing was then held on January 26, 2011.  The Assistant United States Attorney had by then drafted a revised written plea agreement, which corrected the error and indicated that

Collins would likely be sentenced as a career offender with a sentencing guidelines range of 262 to 327 months. As Cascarano had mistakenly reviewed only the lower 84 to 105 month range with Collins, he requested a continuance so that he would have the opportunity to discuss the career offender guidelines range with Collins and ensure that he understood the potential penalties he faced before changing his plea. That request was granted.

Collins next appeared in court on April 13, 2011. On that date, Collins pled guilty pursuant to the revised plea agreement that predicted his sentencing guidelines range at 262 to 327 months. Before accepting his guilty plea, the Court ensured that Collins had in fact gone over that revised plea agreement with Cascarano, that he had read "[e]very word and every line" of it, and that he understood it in its entirety.

As the case was proceeding through these phases, Collins steadfastly maintained to Cascarano that he had not engaged in any criminal activity that would have violated the terms of his cooperation agreement with the federal agents. After discussing the matter with the Assistant United States Attorney, though, Cascarano concluded – correctly – that Collins had indeed breached that agreement, and, furthermore, that he had not provided the federal authorities with any useful information during the period in which he was given to cooperate. Cascarano therefore did not pursue that matter any further. When asked why he had not then tried to bring the issue to the Court's attention himself if he truly believed that he had fulfilled the cooperation agreement and should not have been charged at all in this case, Collins stated that Cascarano had advised him against doing so, believing that the Court would be ill-disposed toward a defendant perceived to be shifting blame for his predicament onto the Government.

In any event, Cascarano did communicate to the Assistant United States Attorney on multiple occasions that Collins had a renewed desire to provide information to the authorities.

Cascarano hoped that, despite having squandered his opportunity at cooperation before being charged, Collins could yet earn a Government motion for a downward departure under United States Sentencing Guidelines § 5K1.1 for "provid[ing] substantial assistance in the investigation or prosecution of another person who has committed an offense" and thereby avoid a within-guidelines sentence. The Assistant United States Attorney, however, rejected those overtures.

Collins' sentencing hearing was held on August 12, 2011. The Court found the applicable guidelines range to be – as the revised plea agreement had predicted – 262 to 327 months. The Assistant United States Attorney did not move for a downward departure under § 5K1.1, and recommended a within-guidelines sentence. Cascarano, with no basis on which to argue that the Government's refusal to file a § 5K1.1 motion was an act of bad faith, made no such argument. Instead, he asserted in his position papers that Collins should receive the ten-year mandatory minimum sentence, and referenced Collins' history of cooperating with detective Klung.

The Assistant United States Attorney responded to the suggestion that Collins had cooperated by explaining to the Court the general outline of the facts surrounding Collins' unhelpfulness to the federal agents described above and by offering to have Harris testify regarding Collins' ongoing unauthorized criminal activity. Cascarano did not challenge the Assistant United States Attorney's account and clarified that he was not accusing the Government of withholding a § 5K1.1 motion in bad faith. With that move, Cascarano wisely ensured that the Government's evidence that Collins had continued to engage in drug trafficking even after he faced certain charges in this case would not be a point of emphasis in the sentencing hearing. Accordingly, Harris' testimony, which would have damaged the defense's

efforts to convince the Court that Collins was deserving of a downward variance, was not heard at that time.  In the end, the Court sentenced Collins to a within-guidelines term of 264 months.

On the whole, then, Collins' accusations that the Assistant United States Attorney and Cascarano misled him and the Court are entirely baseless, and the Court rejects them.  The full day of testimony that was elicited at the evidentiary hearing has now conclusively established that the statements the attorneys made about the opportunity he was given to cooperate were accurate and truthful.


## II.     Conclusions of law.

Twenty-eight U.S.C. § 2255 provides that a federal prisoner "may move the court which imposed [his] sentence to vacate, set aside or correct the sentence" on the ground "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  With the claims that survived to the evidentiary hearing, Collins asserts in various ways that his guilty plea was invalid because it was induced by the misconduct the Government committed in concealing his cooperation and by the ineffectiveness of his attorney in failing to challenge it.

As the Court has previously indicated, these types of claims are properly brought in § 2255 proceedings.  *See Massaro v. United States*, 538 U.S. 500, 509 (2003) ("We do hold that failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."); *Nichols v. Symmes*, 553 F.3d 647, 649 (8th Cir. 2009) (noting that a "claim attacking the validity of a guilty plea, and

therefore the underlying sentence, is properly entertained in a § 2255 petition before the sentencing court") (citation omitted).

To succeed on the Fifth Amendment due process claim Collins has articulated, it is his burden to prove that, due to the Government's actions, his guilty plea was not "a voluntary and intelligent choice among the alternative courses of action open to [him]." *Hill v. Lockhart*, 474 U.S. 52, 56 (1995). And, to succeed on his Sixth Amendment claim, it is Collins' burden to prove both that his attorney's performance fell below an objective standard of competence and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 58 ("We hold . . . that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.").

Both of these categories of claims center on the benefits Collins claimed he was promised in exchange for his cooperation with federal agents. As the Court indicated in its previous order, Collins was unclear in his petition regarding exactly what he contends he was promised, stating that authorities had committed to ensuring that he would not be prosecuted for sending the box with marijuana and cocaine from Phoenix to Minnesota, that he would receive "no jail time" arising from that offense, and/or that he would be otherwise "credited" for his cooperation. At the evidentiary hearing, Collins clarified his claim somewhat, stating several times that he had cooperated in reliance on a specific promise made by Biederman that he would not be prosecuted.

Collins seeks to enforce that alleged promise through these proceedings. As the Court understands his position, Collins asserts that the Government wrongly deprived him of the benefit of the bargain he allegedly made with Biederman by charging him in this case, filing a §

851 enhancement to increase the statutory mandatory minimum sentence, declining to file a § 5K1.1 motion for a downward departure while informing the Court that he had not provided substantial assistance, and seeking a sentence within the career offender guidelines range. Collins simultaneously faults Cascarano for not challenging these actions, such as by moving to compel a § 5K1.1 motion based on the Government's bad faith, and instead advising him to plead guilty and remain silent about his cooperation during his plea and sentencing proceedings.

This constellation of claims fails on the facts. As the Court found above, Collins was not promised any benefits in exchange for his cooperation. What's more, after confessing to having sent drugs from Arizona and being given an opportunity to cooperate, Collins not only failed to provide federal authorities with any useful information, but he also continued to engage in unauthorized criminal activity. Contrary to his oft-repeated claim, Collins was not entitled to any consideration for cooperation. In particular, he was not deserving of a § 5K1.1 motion for the simple fact that he had not provided substantial assistance; the Government's refusal to file such a motion was not made in bad faith or premised on any impermissible factor.

To state it plainly, Collins' decision to plead guilty was voluntary and intelligent. As Collins himself acknowledged, he had no viable defense to the charge he faced. In pressing that charge and pursuing a within-guidelines sentence, the Government did not wrongfully deprive Collins of any benefit he had earned or promise he had been made. It is also clear that Cascarano's refusal to make Collins' meritless claims of compliance with the cooperation agreement an evidentiary issue during the plea and sentencing proceedings was objectively reasonable and caused Collins no prejudice. Pushing his arguments about cooperation would have been as fruitless then as it is here.

Furthermore, contrary to any suggestion Collins may have made that he was deceived by the error in the predicted sentencing guidelines range that appeared in the first written plea agreement, the record demonstrates unequivocally that, before the Court accepted his guilty plea, Collins was properly advised and understood that he would likely be sentenced as a career offender. With that understanding, Collins signed a revised plea agreement that correctly predicted his career offender guidelines range, returned to Court, and, during his plea colloquy, acknowledged that the determination of the applicable range and his sentence was exclusively the job of the Court.

There was thus no "bait and switch" as Collins contends, whether with respect to the opportunity he was given to cooperate or the guilty plea he entered or the sentence he received. Collins' claims are therefore denied.

### III. Certificate of appealability.

Under 28 U.S.C. § 2253(c), an appeal may not be taken from a final order denying a § 2255 motion without a certificate of appealability, which "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." As here, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Because Collins has not demonstrated that reasonable jurists would find the rejection of his constitutional claims debatable or wrong, the Court declines to issue a certificate of appealability.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1. Defendant's Motion under 28 U.S.C. § 2255 to Vacate or Set Aside Sentence [ECF

   No. 98] is DENIED.

2. A certificate of appealability is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: July 23, 2015                          s/Joan N. Ericksen
                                              JOAN N. ERICKSEN
                                              United States District Judge